# EXHIBIT A

Stephen L. O'Brien, Esquire
October 28, 2011
Page 1

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ELIZABETH COSGROVE**<br>**and LAURIE SALERNO,** | ) <br> ) <br> ) |
| **Plaintiffs,** | ) <br> ) |
| **COUNTY OF SUFFOLK,**<br>**SUFFOLK COUNTY**<br>**POLICE DEPARTMENT, and**<br>**LT. WILLIAM F. HASPER,** | ) <br> ) <br> ) <br> ) <br> ) |
| **Defendants.** | ) |

---

## FIRST AMENDED COMPLAINT

---

In support of their Complaint for damages for hostile environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, as enforced by 42 U.S.C. § 1983, and the New York Human Rights Law, Plaintiffs Elizabeth Cosgrove and Laurie Salerno ("Plaintiffs"), by and through their attorneys, O'Brien & O'Brien, LLP, state as follows:

### JURISDICTION AND VENUE

1.     Plaintiffs bring this action for damages and equitable relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., *as amended*, 42 U.S.C. § 1981a, 42 U.S.C. 1983, and Executive Law § 296(6).

2.     Jurisdiction of this action is conferred upon the Court by 28 U.S.C. §§ 1331, 1367, and 1343(a)(3), and 42 U.S.C. § 2000e-5(f)(3).

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants reside in the Eastern District of New York and a substantial part of the unlawful employment practices alleged occurred in that district.

## PARTIES

4.      Plaintiff  Elizabeth Cosgrove is an adult female person and a resident of the State of New York, Suffolk County.

5.      Plaintiff Laurie Salerno is an adult female person and a resident of the State of New York, Suffolk County, and an employee of Suffolk County.

6.      Defendant County of Suffolk ("County") is a political subdivision of the State of New York and an employer within the meaning of 42 U.S.C. § 2000e(b) and Executive Law § 292(4).

7.      Defendant Lt. William F. Hasper ("Lt. Hasper") is an adult male person and resident of the State of New York, Suffolk County, an employee of Suffolk County, and a person within the meaning of Executive Law § 292(1).  He is sued in his individual capacity.

## JURY DEMAND

8.      Plaintiffs demand a trial by jury on each and every claim to which they are so entitled.

## STATEMENT OF FACTS

9.      Plaintiff Cosgrove was employed by the Suffolk County Police Department as a Clerk from March 2006 through her wrongful termination on November 20, 2009.

2

10.    Plaintiff Salerno has been employed by the Suffolk County Police Department as a police officer since 1988.

11.    Lt. Hasper has been employed by the Suffolk County Police Department as a police officer since about 1993.

12.    Lt. Hasper was the Commanding Officer of the Court Liaison Office, and was Plaintiffs' supervisor, from about August 2007 through about March 2010.

13.    On information and belief, Lt. Hasper has a history of being transferred from one division of the Suffolk County Police Department to another because of his sexual harassment of women.

**Allegations Specific To Plaintiff Cosgrove**

14.    At all times during her employment with Defendant, Plaintiff Cosgrove satisfactorily performed the duties assigned to her.

15.    From the time of her transfer to court liaison until his retirement in July 2007, Plaintiff Cosgrove was supervised by Lt. Jack Petrowski of the Suffolk County Police Department.

16.    Upon Lt. Petrowski's retirement in July 2007, Defendant Lt. Hasper became Commanding Officer of the Court Liaison Office of the Suffolk County Police Department and Plaintiff Cosgrove's supervisor.

17.    The congenial atmosphere of the Court Liaison Office changed with the arrival of Lt. Hasper.

18.     Rather than working to see that office staff worked in a cooperative manner, Lt. Hasper appeared to enjoy setting up office staff against one another.

19.     For example, on one occasion, Lt. Hasper suggested to Plaintiff Cosgrove that she tell another employee, Betty Bunton, whom Cosgrove was assisting, that Cosgrove was returning to her desk "just to piss her off."

20.     Once Lt. Hasper was Court Liaison Command Officer, Plaintiff Cosgrove and other employees who worked in the back of the Court Liaison Office stopped coming to the front for their breaks because they did not want to deal with the antics of Lt. Hasper.

21.     Lt. Hasper did not keep regular hours, and he told the employees including plaintiffs in the Court Liaison Office that he was "untouchable" because of his "political connections."

22.     Lt. Hasper did not respect boundaries and treated female employees as potential sexual conquests rather than as employees of the County working on a common mission.

23.     Effective March 17, 2008, Plaintiff Cosgrove was promoted to Senior Clerk Typist.

24.     Plaintiff's duties as Senior Clerk Typist involved

(20%) Update the status of warrants into NXView. Warrants must be deleted to avoid arrest of defendants that have appearances for scheduled court date. New warrants must be entered in accordance with court docket.

(10%) File NCIS Fingerprint Response sheets according to arrest date and police precinct for future use.

(40%) Enter past due parking tickets. Tickets must be checked for correct VTL violation charge/fine and amended as necessary. Name of owner/operator is obtained from use of DMV record system and then entered into Unified Court System, labels to tag each ticket are produced. For each ticket entered, the appropriate letter is mailed to defendant stating charge along with a photocopy of the ticket. A court calendar is run for future use.

(15%) Update pleas to tickets (not guilty, abated, motion) which have been accepted at First District Court and correct court docket as necessary.

(15%) Enter cash receipts that have been mailed or paid at Cashier's window.

25.   When Plaintiff Cosgrove was promoted to Senior Clerk Typist, Lt. Hasper told court employees that he was responsible for her upgrade, even though the arrival came about as a result of a desk audit conducted under Lt. Petrowski.

26.   When Plaintiff Cosgrove's promotion became effective, Lt. Hasper repeatedly pressured her to go to lunch with him to celebrate her promotion.

27.   Plaintiff Cosgrove repeatedly turned down Lt. Hasper's invitations because she needed to go home to lunch with her son, but she agreed when he told her that he was inviting all the women in the office.

28.   Just before the group lunch was supposed to occur, another employee, Joan Monteserrato, told Plaintiff Cosgrove that Lt. Hasper had made it clear to the other women that he only wanted to go to lunch with Plaintiff Cosgrove.

29.   Although Plaintiff Cosgrove wanted to drive her own car to lunch at the Peter Pan diner, Lt. Hasper insisted that they go together in an unmarked Police Department vehicle.

30.     Instead of returning to the office following lunch, Lt. Hasper drove Plaintiff Cosgrove to the Brightwaters area, where he pulled into the driveway of a home, which he identified as the home of a politician who was a friend of his.

31.     Lt. Hasper knocked on the front door of the home, and when he got no answer he returned to the car and said, "Someday this will be all yours. Liz, if you treat me right, I'll do the right thing by you."

32.     Lt. Hasper's statement frightened Plaintiff Cosgrove because she interpreted his remarks to be a request that she perform a sexual act on him.

33.     About one month following the lunch incident, Plaintiff Cosgrove requested a tour change from Lt. Hasper.

34.     Plaintiff Cosgrove told Lt. Hasper that she needed the tour change in order to continue working a second job with the Transportation Safety Administration ("TSA") dictated by financial necessity, which she detailed for him.

35.     Plaintiff Cosgrove explained that her reasons for requesting the tour change were personal and requested that Lt. Hasper not discuss her request with anyone else in the office.

36.     About one month later, Lt. Hasper had not made a decision on her request for a tour change, but Plaintiff Cosgrove learned that he had discussed her request with at least one other employee, Joan Monteserrato.

37.     When Plaintiff Cosgrove confronted Lt. Hasper about betraying her confidentiality, he reacted angrily, ordering her to discuss the matter with Joan in his office,

then, when she began to follow him to his office, turning and grabbing her arm above the elbow and stating in a nasty tone of voice, "What do you think this is going to prove?"

38.     P.O. Schneider, who apparently also had learned of Plaintiff's request for a tour change, stated in front of other employees, "You ain't getting your hours; just give him a blow job and you'll get whatever you want."

39.     In February 2009, Plaintiff Cosgrove proposed that she be given the responsibility of entering state warrants into the system, since the state employee who performed that function left at noon each day and state supervisors requested that police personnel enter the warrants, but Lt. Hasper turned down her request.

40.     One of the state supervisors, Vinny Calcaterra, reported to Plaintiff Cosgrove that Lt. Hasper became agitated and unprofessional when he told Mr. Calcaterra that he did not want Plaintiff performing that function.

41.     In July 2009, Plaintiff Cosgrove again asked for a change of tour.

42.     Lt. Hasper responded in an inappropriate manner, telling Plaintiff Cosgrove she should get more money from her former husband, questioning how she had paid her bills the year before, and asking to speak to her TSA supervisor to see if Plaintiff was lying about flight changes at the airport.

43.     Lt. Hasper never granted Plaintiff's tour change, and she was required to use annual leave in order to leave 30 minutes early one day per week for her second job with the TSA, even though Lt. Hasper allowed other employees in the office to attend doctor's appointments, get car repairs, or run other errands without using leave.

44.     Plaintiff Cosgrove also had to report that she was leaving for lunch, even though other employees were not required to do so.

45.     In September 2010, Lt. Hasper questioned Plaintiff Cosgrove about some lengthy telephone calls to the New York City Police Academy and asked whether she knew anyone at the Academy.

46.     Lt. Hasper appeared peeved when he learned that Plaintiff's friend at the Academy was male.

47.     Lt. Hasper called Plaintiff Cosgrove a liar in response to her answers concerning the telephone calls, then told her that she needed a good spanking and that she just got spanked.

48.     A day or two later, Plaintiff Cosgrove was transferred to the Central Records office.

49.     Following Plaintiff's transfer to Central Records, Lt. Hasper apparently overheard a conversation between two Court Liaison Office employees about seeing Plaintiff Cosgrove and her friend from the Academy at Carvel and started questioning the two women about Plaintiff's friend.

50.     Sometime thereafter, Lt. Hasper telephoned the New York City Police Department Office of Internal Affairs and suggested that that office investigate Plaintiff's friend and take action against him.

51.     Lt. Hasper then asked a member of New York City Police Department Internal Affairs to show the two employees a photo spread with the friend's picture included and asked them to identify Plaintiff's friend.

52.     Thereafter, Lt. Hasper took a representative from the New York City Police Department Internal Affairs into a court café and asked the manager, Pam Kaleita, to give a statement about seeing Plaintiff Cosgrove with her friend in the café.

53.     Because of Lt. Hasper's ongoing harassment of Plaintiff Cosgrove, she was forced to resign her employment with Suffolk County on November 20, 2009.

54.     On December 10, 2009, after Plaintiff Cosgrove had left her job, Lt. Hasper again visited the café and asked Ms. Kaleita for any "dirt" she had on "Liz and her friend."

55.     When Ms. Kaleita refused to cooperate, Lt. Hasper stormed out of the café, leaving Ms. Kaleita in fear.

56.     Lt. Hasper also made public sexual remarks about other employees in the Court Liaison Office. For example, during a meeting with union representatives Jeanie and Ben, Lt. Hasper stated that Plaintiff Salerno, a female officer assigned to the Court Liaison Office, performed sexual acts with her dogs.

57.     Other Court Liaison Office employees told Plaintiff that Lt. Hasper had made sexual remarks and/or advances to café employees and assistant district attorneys.

58.     On December 21, 2009, Plaintiff Cosgrove filed a written Sexual Harassment Complaint with Suffolk County.

59.     Prior to filing the written complaint, Plaintiffs complained about Lt. Hasper's behavior to civilian union representative Ben, Sgt. Nancy Burn, Chief Robert Moore, and Captain Nieves.

### Allegations Specific To Plaintiff Salerno

60.     At all times during her employment with Defendant, Plaintiff Salerno satisfactorily performed the duties assigned to her.

61.     Plaintiff Salerno was assigned to the Court Liaison Office in 2000, and she has continued that assignment through the present.

62.     On May 2, 2008, Plaintiff Salerno filed a written Sexual Harassment Complaint with Suffolk County.

63.     Plaintiff Salerno complained that Lt. Hasper, who began supervising her in August 2007, should not supervise the office because seven or eight years earlier he had followed her from the courtroom where she was testifying and requested a date, and then, after she turned him down because she was seeing someone else, he had obtained her personal telephone number from office records and called her to pressure her for a date.

64.     Plaintiff Salerno complained that Lt. Hasper intimidated the civilian workers by cornering them if they spoke with her.

65.    Plaintiff Salerno complained that Lt. Hasper should not supervise the office because three female employees in the First Precinct and two female employees in the Second Precinct had complained of harassment by Lt. Hasper.

66.    Plaintiff Salerno complained that Lt. Hasper should not supervise the office because he had been banned from the District Attorney's Office for going into the office and asking female assistant district attorneys if they needed rides to their cars, even though their cars were only 100 feet away.

67.    Plaintiff Salerno complained that on March 22, 2008, Lt. Hasper used her computer without her permission and accessed a pornography site which caused such severe problems to her computer that she had to get a replacement.

68.    Plaintiff Salerno complained that on May 2, 2008, Lt. Hasper stated to her in the presence of three other officers that she was not to wear her police sweater, even though she had a doctor's note which had permitted her to wear the sweater for the previous eight years. He told her to find the note, but it was missing from her file.

69.    The next day, May 3, 2008, Plaintiff Salerno gave Lt. Hasper a new doctor's note authorizing her to wear a police sweater, but Lt. Hasper said he had talked to the chiefs about her, indicating her note was not sufficient.

70.    After Plaintiff Salerno filed her complaint, Lt. Hasper continued to demean her work.

71.     On one occasion, Lt. Hasper told an assistant attorney general not to come to the Court Liaison Office to work on arrests on a particular day because "I have the female cop.  Come in tomorrow when the A Team is working and the guys will be here."

72.     On another occasion when there was a heavy snow and Plaintiff Salerno and several male officers made the effort to arrive at the office on time, Lt. Hasper ordered Plaintiff Salerno to return home and take leave, but allowed the male officers to remain in the office and work, in spite of Plaintiff Salerno's expressed need to perform her duties.

73.     Lt. Hasper frequently would not approve Plaintiff Salerno's requests for days off, while granting requests for days off from male employees.

74.     Lt. Hasper charged time against Plaintiff Salerno if she had to come in late due to a doctor's appointment, but he did not charge time against male employees who came in late due to a doctor's appointment.

75.     When Lt. Hasper was outside the Court Liaison Office and called in, he would hang up if Plaintiff Salerno answered the telephone, but not if a male answered the telephone.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

76.     On or about May 12, 2010, Plaintiff Cosgrove timely filed a Charge of Discrimination against Defendant Suffolk County with the Equal Employment Opportunity Commission ("EEOC"). A copy of the Charge of Discrimination is attached as Exhibit "A."

77.     Plaintiff Cosgrove's EEOC Charge of Discrimination mentioned sexual harassment of other employees, including Plaintiff Salerno.

78.     On or about April 11, 2011, the EEOC issued Plaintiff a Right to Sue letter. A copy of the Right to Sue letter is attached as Exhibit "B".

79.     Under the "single filing rule," Plaintiff Salerno is entitled to join this Title VII lawsuit without filing a charge with the EEOC because her claims arose out of the same circumstances and occurred within the same general time frame as the claims of Plaintiff Cosgrove.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Both Plaintiffs' Claim of Title VII Hostile Environment Sex Discrimination Against Suffolk County)

80.     The allegations set forth in 1 through 79 are incorporated by reference as if fully set forth herein.

81.     During and after the time he supervised the Plaintiffs, Lt. Hasper subjected each of them to unwanted sexual harassment on account of her gender.

82.     The daily harassment was sufficiently severe or pervasive as to alter the conditions of Plaintiffs' employment and create an abusive work environment.

83.     Lt. Hasper's sexually objectionable conduct was offensive such that a reasonable person would find it hostile and/or abusive, and both Plaintiffs did in fact perceive it to be so.

84.     Plaintiff Cosgrove was forced to resign her employment due to the hostile environment in the Court Liaison Office.

85.     Defendant Suffolk County was aware of Lt. Hasper's abusive conduct and failed to take any action.

86.     All of the foregoing actions and inactions were undertaken in violation of 42 U.S.C. § 2000e-2(a).

87.     As a result of the aforementioned unlawful employment actions, Plaintiffs have suffered harm, including loss of earnings and emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Both Plaintiffs' Claim of State Human Rights Law Hostile Environment Sex Discrimination Against Suffolk County)

88.     The allegations set forth in paragraphs 1 through 87 are incorporated by reference as if fully set forth herein.

89.     Suffolk County's actions and inactions with regard to the hostile environment in the Court Liaison Office were undertaken in violation of the State Human Rights Law, Executive Law § 296(1)(a).

90.     As a result of the aforementioned unlawful employment actions, Plaintiffs have suffered harm, including loss of earnings and emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Both Plaintiffs' Claim of State Human Rights Law Hostile Environment Sex Discrimination Against Lt. Hasper)

91.     The allegations set forth in paragraphs 1 through 90 are incorporated by reference as if fully set forth herein.

92.     Lt. Hasper actually participated in the conduct giving rise to the hostile environment in the Court Liaison Office, in violation of the State Human Rights Law, Executive Law § 296(6).

93.     As a result of Lt. Hasper's unlawful employment actions, Plaintiffs have suffered harm, including loss of earnings and emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress.

### AS AND FOR A FOURTH CAUSE OF ACTION

### (Plaintiff Cosgrove's Claim of Title VII Quid Pro Quo Sex Discrimination against Suffolk County)

94.     The allegations set forth in paragraphs 1 through 93 are incorporated by reference as if fully set forth herein.

95.     By his behavior and statements toward Plaintiff Cosgrove, Lt. Hasper conveyed to Plaintiff that the terms and conditions of her employment were dependent upon her submission to his unwelcome sexual requests and mistreatment on account of her gender, in violation of 42 U.S.C. § 2000e-2(a).

96.     When Plaintiff Cosgrove failed to accede to those requests, Lt. Hasper, inter alia, refused to grant her a change of tour, refused to allow her to enter state warrants into the system, had her transferred to Central Records, and forced her to resign her position.

97.     As a result of Lt. Hasper's unlawful employment actions, Plaintiff Cosgrove has suffered harm, including loss of earnings and emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress.

### AS AND FOR A FIFTH CAUSE OF ACTION

**(Plaintiff Cosgrove's Claim of State Human Rights Law Quid Pro
Quo Sex Discrimination Against Suffolk County)**

98.     The allegations set forth in paragraphs 1 through 97 are incorporated by reference as if fully set forth herein.

99.     Suffolk County's actions and inactions with regard to the quid pro quo sex discrimination against Plaintiff Cosgrove were undertaken in violation of the State Human Rights Law, Executive Law §296(1)(a).

100.    As a result of the aforementioned unlawful employment actions, Plaintiff Cosgrove has suffered harm, including loss of earnings and emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress.


## AS AND FOR A SIXTH CAUSE OF ACTION

**(Plaintiff Cosgrove's Claim of State Human Rights Law
Quid Pro Quo Sex Discrimination Against Lt. Hasper)**

101.    The allegations set forth in paragraphs 1 through 100 are incorporated by reference as if fully set forth herein.

102.    Lt. Hasper actually participated in the conduct giving rise to allegations of quid pro quo sex discrimination, in violation of the State Human Rights Law, Executive Law § 296(6).

103.    As a result of Lt. Hasper's unlawful employment actions, Plaintiff Cosgrove has suffered harm, including loss of earnings and emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress.

## AS AN FOR A SEVENTH CAUSE OF ACTION

### (Plaintiff Salerno's Title VII Retaliation
### Claim Against Suffolk County)

104.    The allegations set forth in paragraphs 1 through 103 are incorporated by reference as if fully set forth herein.

105.    In filing her written Sexual Harassment Complaint with Suffolk County, Plaintiff engaged in protected activity under Title VII.

106.    Lt. Hasper took adverse employment action against Plaintiff Salerno by, inter alia, creating a sexually hostile environment, requiring her to take unnecessary leave, refusing her reasonable requests to take leave and demeaning her before her colleagues.

107.    In violation of Title VII, 42 U.S.C. § 2000e-3(a), Lt. Hasper took the adverse employment action against Plaintiff Salerno on account of her lawful complaint of sexual harassment and he treated her less favorably than similarly situated male employees.

108.    Defendant Suffolk County either knew about Lt. Hasper's actions or acquiesced in such actions so as to condone and encourage his behavior.

109.    As a proximate cause of the aforementioned unlawful employment actions, Plaintiff Salerno has suffered harm, including loss of earnings and emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress.

### AS AND FOR AN EIGHTH CAUSE OF ACTION

### (Plaintiff Salerno's Claim of State Human Rights Law
### Retaliation Against Suffolk County)

110.    The allegations set forth in paragraphs 1 through 109 are incorporated by reference as if fully set forth herein.

111.    Suffolk County's actions and inactions taken in response to Lt. Hasper's retaliatory acts, as set forth in the Seventh Cause of Action, were undertaken in violation of the State Human Rights Law, Executive Law § 296(7).

112.    As a result of the aforementioned unlawful employment actions, Plaintiff Salerno has suffered harm, including loss of earnings and emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress.

## AS AND FOR A NINTH CAUSE OF ACTION

### (Plaintiff Salerno's Claim of State Human Rights Law Retaliation Against Lt. Hasper)

113.    The allegations set forth in paragraphs 1 through 112 are incorporated by reference as if fully set forth herein.

114.    Lt. Hasper actually participated in the conduct giving rise to the unlawful retaliation, in violation of the State Human Rights Law, Executive Law § 296(6), (7).

115.    As a result of Lt. Hasper's unlawful employment actions, Plaintiffs have suffered harm, including loss of earnings and emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress.

## AS AND FOR A TENTH CAUSE OF ACTION

**(Both Plaintiffs' Claim of a Denial of Equal Protection in
Violation of 42 U.S.C. § 1983 Against Lt. Hasper)**

116.    The allegations set forth in paragraphs 1 through 115 are incorporated by reference as if fully set forth herein.

117.    During and after the time he supervised the Plaintiffs, Lt. Hasper subjected each of them to unwanted sexual harassment on account of her gender in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

118.    The daily harassment was sufficiently severe or pervasive as to alter the conditions of Plaintiffs' employment and create an abusive work environment.

119.    Lt. Hasper's sexually objectionable conduct was offensive such that a reasonable person would find it hostile and/or abusive, and both Plaintiffs did in fact perceive it to be so.

120.    At all times relevant, Lt. Hasper was acting as a supervisory employee of Suffolk County under color of state law.

121.    As a result of Lt. Hasper's unconstitutional actions, Plaintiffs have suffered harm, including loss of earnings and emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION
(Both Plaintiffs' Claim of a Denial of Equal Protection in
Violation of 42 U.S.C. § 1983 Against Suffolk County)**

122.    The allegations set forth in paragraphs 1 through 121 are incorporated by reference as if fully set forth herein.

123.   Suffolk County acted at all times under color of state law.

124.   Suffolk County has a policy and/or practice of transferring male employees who engage in sexual harassment of females, instead of taking action to prohibit further sexual harassment by such employees, in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

125.   As a result of Suffolk County's unconstitutional policy and/or practice, Plaintiffs have suffered harm, including loss of earnings and emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress.

**WHEREFORE**, Plaintiffs request that this Court:

1.   Issue a declaratory judgment declaring that defendants have discriminated against plaintiffs on the basis of sex, as prohibited by Title VII, the New York Human Rights Law, and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

2.   Issue a permanent injunction prohibiting defendants from engaging in the illegal and discriminating conduct alleged herein;

3.   Award equitable relief to plaintiffs in the form of back pay and benefits to make plaintiffs whole;

4.   Award compensatory damages to Plaintiffs in an amount to be determined at trial;

5.      Order Lt. Hasper to pay punitive damages to Plaintiffs in an amount to be

determined at trial;

6.      Order Defendants to pay the costs of suit, including reasonable attorney's fees

and expert fees pursuant to 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988; and

7.      Grant such other and further relief as the Court deems just, proper, and

equitable.                                **ELIZABETH COSGROVE and
                                          LAURIE SALERNO**

                              By:    _____
                                     Stephen L. O'Brien, Esquire
                                     O'Brien & O'Brien, LLP
                                     168 Smithtown Boulevard
                                     Nesconset, NY  11767
                                     Telephone:  (631) 265-6660
                                     Facsimile:  (631) 265-3991
                                     E-Mail:  stephen@oboblaw.com

                                     Attorney for Plaintiffs

# EXHIBIT "A"

1

STATE OF NEW YORK )
                        ) SS.:
COUNTY OF SUFFOLK )

ELIZABETH COSGROVE, being duly sworn deposes and says:

1.      I was employed as a clerk in the Police Department County of Suffolk,

New York from March 2006 through my wrongful termination on November 20, 2009.

2.      Effective March 17, 2008 I was promoted to Senior Clerk Typist.

3.      My duties involved:


(20%) Update the status of warrants into NXView. Warrants must be deleted to
avoid arrest of defendants that have appearances for scheduled court date.
New warrants must be entered in accordance with court docket.
(10%) File NCIS Fingerprint Response sheets according to arrest date and police
precinct for future use.
(40%) Enter past due parking tickets. Tickets must be checked for correct VTL
violation charge/fine and amended as necessary. Name of owner/operator is
obtained from use of DMV record system and then entered into Unified Court
System, labels to tag each ticket are produced. For each ticket entered, the
appropriate letter is mailed to defendant stating charge along with a
photocopy of the ticket. A court calendar is run for future use.
(15%) Update pleas to tickets (not guilty, abated, motion) which have been
accepted at First District Court and correct court docket as necessary.
(15%) Enter cash receipts that have been mailed or paid at Cashier's window.


4.      At all times during my employment with the Police Department, I

satisfactorily performed the duties assigned to me.

5.      Since at least April 2008, the Police Department of Suffolk County has

engaged in unlawful employment practices, in violation of Section 703(a) of Title VII, 42

U.S.C. §2000e-2(c)(2), by creating a sexually hostile work environment based on my

sex as well as other similarly situated female employees.

6.      Upon Lt. Petrowski's retirement in April 2008, Lt. Hasper became commanding officer of the Court Liaison Office of the Suffolk County Police Department and supervisor over me.

7.      The congenial atmosphere of the Liaison Office changed with the arrival of Lt. Hasper.

8.      Rather than working to see that office staff worked in a cooperative manner, Lt. Hasper appeared to enjoy setting up office staff against one another.

9.      For example, on one occasion, Lt. Hasper suggested to me that I tell another employee, Betty Bunton, whom I was assisting, that I was returning to my desk "just to piss her off."

10.      Once Lt. Hasper was Court Liaison Commanding officer, me and other employees who worked in the back of the Court Liaison Office stopped coming to the front for breaks because we did not want to deal with the antics of Lt. Hasper.

11.      Lt. Hasper did not keep regular hours, and he told the employees in the Court Liaison Office that he was "untouchable" because of his "political connections."

12.      Lt. Hasper did not respect boundaries and treated female employees as potential sexual conquests rather than as employees of the County working on a common mission.

13.      When I was promoted to Senior Clerk Typist, Lt. Hasper told court employees that he was responsible for my upgrade, even though the arrival came about as a result of a desk audit conducted under the previous Lt., Jack Petrowski.

14.      When my promotion became effective, Lt. Hasper repeatedly pressured me to go to lunch with him to celebrate my promotion.

15.     I repeatedly turned down Lt. Hasper's invitations because I needed to go home to lunch with my son, but I agreed when he told me that he was inviting all the women in the office.

16.     Just before the group lunch was supposed to occur, another employee, Joan Monteserrato, told me that Lt. Hasper had made it clear to the other women that he only wanted to go to lunch with me.

17.     Although I wanted to drive my own car to lunch at the Peter Pan diner, Lt. Hasper insisted that we go together in an unmarked Police Department vehicle.

18.     Instead of returning to the office following lunch, Lt. Hasper drove me to the Brightwaters area, where he pulled into the driveway of a home, which he identified as the home of a politician who was a friend of his.

19.     Lt. Hasper knocked on the front door of the home, and when he got no answer he returned to the car and said, "Someday this will be all yours. Liz, if you treat me right, I'll do the right thing by you."

20.     Lt. Hasper's statement frightened me because I interpreted his remarks to be a request that I perform a sexual act on him.

21.     About one month following the lunch incident, I requested a tour change from Lt. Hasper.

22.     I told Lt. Hasper that I needed the tour change in order to continue working a second job with the Transportation Safety Administration ("TSA") dictated by financial necessity, which I detailed for him.

23.     I explained that my reasons for requesting the tour change were personal and requested that Lt. Hasper not discuss my request with anyone else in the office.

24.     About one month later, Lt. Hasper had not made a decision on my request for a tour change, but I learned that he had discussed my request with at least one other employee, Joan Monteserrato.

25.     When I confronted Lt. Hasper about betraying my confidentiality, he reacted angrily, ordering me to discuss the matter with Joan in his office, then, when I began to follow him to his office, turning and grabbing my arm above the elbow and stating in a nasty tone of voice, "What do you think this is going to prove?"

26.     P.O. Schneider, who apparently also had learned of my request for a tour change, stated in front of other employees, "You ain't getting your hours; just give him a blow job and you'll get whatever you want."

27.     In February 2009, I proposed that I be given the responsibility of entering state warrants into the system, since the state employee who performed that function left at noon each day and state supervisors requested that police personnel enter the warrants, but Lt. Hasper turned down my request.

28.     One of the state supervisors, Vinny Calcaterra, reported to me that Lt. Hasper became agitated and unprofessional when he told Mr. Calcaterra that he did not want me performing that function.

29.     In July 2009, I again asked for a change of tour.

30.     Lt. Hasper responded in an inappropriate manner, telling me I should get more money from my former husband, questioning how I had paid my bills the year before, and asking to speak to my TSA supervisor to see if I was lying about flight changes at the airport.

31.     Lt. Hasper never granted my tour change, and I was required to use Annual Leave in order to leave 30 minutes early one day per week for my second job with the TSA, even though Lt. Hasper allowed other employees in the office to attend doctor's appointments, get car repairs, or run other errands without using leave.

32.     I also had to report that I was leaving for lunch, even though other employees were not required to do so.

33.     In September 2010, Lt. Hasper questioned me about some lengthy telephone calls to the New York City Police Academy and asked whether I knew anyone at the Academy.

34.     Lt. Hasper appeared peeved when he learned that my friend at the Academy was male.

35.     Lt. Hasper called me a liar in response to my answers concerning the phone calls, then told me I needed a good spanking and I just got spanked.

36.     A day or two later I was transferred to the Central Records office.

37.     Following my transfer to Central Records, Lt. Hasper apparently overheard a conversation between two Court Liaison Office employees about seeing me and my friend from the Academy at Carvel and started questioning the two women about my friend.

38.     Sometime thereafter, Lt. Hasper telephoned the New York City Police Department Office of Internal Affairs and suggested that office investigate my friend and take action against him.

39.     Lt. Hasper then asked a member of the New York City Police Department Internal Affairs to show the two employees a photo spread with my friend's picture included and asked them to identify my friend.

40.     Thereafter Lt. Hasper took a representative from the New York City Police Department Internal Affairs into a court café and asked the manager, Pam Kaleita, to give a statement about seeing me with my friend in the café.

41.     Because of Lt. Hasper's ongoing harassment of me, I was forced to resign my employment with Suffolk County on November 20, 2009.

42.     On December 10, 2009, after I had left my job, Lt. Hasper again visited the café and asked Ms. Kaleita for any "dirt" she had on "Liz and her friend."

43.     When Ms. Kaleita refused to cooperate, Lt. Hasper stormed out of the café , leaving Ms. Kaleita in fear.

44.     Lt. Hasper also made public sexual remarks about other employees in the Court Liaison Office.  For example, during a meeting with union representatives Jeanie and Ben, Lt. Hasper stated that P.O. Salerno, a female officer assigned to the Court Liaison Office, performed sexual acts with her dogs.

45.     Other Court Liaison Office employees told me that Lt. Hasper had made sexual remarks and/or advances to café employees and assistant district attorneys.

46.     On December 21, 2009, I filed a written Sexual Harassment Complaint with the Suffolk County Police Department.

47.     On May 12, 2010, I complained to the EEOC about the discriminatory actions of the Suffolk County Police Department.

48.     The Police Department constructively discharged me by creating such an intolerably hostile work environment that I was forced to leave my employment with the Police Department.

49.     The effect of the practices of the Police Department has been to deprive me and other similarly situated women of equal employment opportunities and otherwise adversely affect their status as employees.

50.     The unlawful employment practices were intentional.

51.     The unlawful employment practices were done with malice or with reckless indifference to the federally protected rights of me and other similarly situated women.

52.     I am providing this affidavit to the EEOC as part of my "Charge of

8

Discrimination" and understand that this affidavit will be utilized by the EEOC to make findings regarding potential charges and/or a Notice of Right to Sue.

_____/S/_____
ELIZABETH COSGROVE

Sworn to this ____
Day of November, 2010