UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ELIZABETH COSGROVE and LAURIE SALERNO, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | 11-CV-3112 (JFB) (ETB) |
| COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE DEPARTMENT, and LT. WILLIAM F. HASPER, | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN
RESPONSE TO DEFENDANT HASPER'S
RULE 12(b)(6) MOTION TO DISMISS**

Stephen L. O'Brien, Esquire
O'Brien & O'Brien, LLP
168 Smithtown Boulevard
Nesconset, NY  11767
Telephone:  (631) 265-6660
Facsimile:  (631) 265-3991
E-Mail:  stephen@oboblaw.com

**Attorney for Plaintiffs**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES............................................................. ii

PRELIMINARY STATEMENT......................................................... 1

STATEMENT OF FACTS............................................................... 1

    Allegations Specific To Plaintiff Cosgrove............................... 2

    Allegations Specific To Plaintiff Salerno.................................. 5

    Exhaustion of Administrative Remedies.................................. 7

ARGUMENT

    I.    STANDARD ON MOTION TO DISMISS............................. 7

    II.    THE NOTICE-OF-CLAIM PROVISION DOES NOT APPLY TO PLAINTIFFS' CLAIMS AGAINST LT. HASPER................ 8

    III.    PLAINTIFFS' CLAIMS BROUGHT PURSUANT TO 42 U.S.C. § 1983 AND THE NEW YORK STATE HUMAN RIGHTS LAW ARE NOT ALL TIME-BARRED..................... 10

    IV.    THE AMENDED COMPLAINT STATES DISCRIMINATION CLAIMS................................................................................ 11

        A.    The Amended Complaint Alleges Claims For Hostile Environment Discrimination........................ 11

        B.    Ms. Cosgrove's Has Alleged A Claim For Quid Pro Quo Sex Discrimination................................. 13

    V.    P.O. SALERNO HAS ALLEGED A CLAIM FOR RETALIATION............................................................... 14

    VI.    MS. COSGROVE STATES A CLAIM FOR CONSTRUCTIVE DISCHARGE................................... 15

CONCLUSION............................................................................... 16

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009)............................ 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................... 7

*Champion v. Nationwide Sec., Inc.*, 450 Mich. 702, 545 N.W.2d 596
    (1996), *overruled on other grounds by Hamed v. Wayne County*,
    490 Mich. 1, 803 N.W.2d 237 (2011)................................. 14

*Clarke v. Pacifica Found.*, 2011 WL 4356085 (E.D.N.Y.
    Sept. 16, 2011)..................................................... 14

*D'Angelo v. City of New York*, 929 F. Supp. 129 (S.D.N.Y. 1996)................... 8

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010)..................... 7

*Grays v. City of New Rochelle*, 354 F. Supp. 2d 323 (S.D.N.Y. 2005)............... 9

*Litchhult v. USTRIVE2, Inc.*, 2011 WL 3877084 (E.D.N.Y.
    Sept. 1, 2011)....................................................... 12

*Madray v. Long Island Univ.*, 789 F. Supp. 2d 403 (E.D.N.Y. 2011) ............... 13

*Penn. State Police v. Suders*, 542 U.S. 129 (2004)............................... 13

*Pezzano v. Sears, Roebuck & Co.*, 131 F.3d 131, 1997 WL 738071
    (2d Cir. 1997) (unpublished table disposition)........................ 12

*Wal-Mart Stores, Inc. v. Itz*, 21 S.W.3d 456 (Tex. App. 2000).................... 14

**Statutes**

42 U.S.C. § 1981a.................................................................. 1

42 U.S.C. § 1983................................................................ 1, 10

## TABLE OF AUTHORITIES (CONT'D)

**Statutes**                                                                 **Page**

42 U.S.C. §§ 2000e et seq.............................................. 1

Executive Law § 296................................................... 1

N.Y. General Municipal Law § 50-e..................................... 8

N.Y. General Municipal Law § 50-i..................................... 9

N.Y. General Municipal Law § 50-m.................................... 9

Suffolk County Code § 42-3............................................ 9

Suffolk County Code § 42-48........................................... 9

## PRELIMINARY STATEMENT

Plaintiffs Elizabeth Cosgrove and Laurie Salerno have brought this action for damages and equitable relief for sexual harassment, quid pro quo sexual discrimination, and retaliation against the County of Suffolk and Lt. William Hasper pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended, 42 U.S.C. § 1981a, 42 U.S.C. § 1983, and the New York State Human Rights Law ("NYSHRL"), Executive Law § 296(6). Suffolk County and Lt. Hasper have each filed a separate motion to dismiss the Amended Complaint. Plaintiffs submit this memorandum of law in response and opposition to Lt. Hasper's Motion to Dismiss.

## STATEMENT OF FACTS

Ms. Cosgrove was hired by the Suffolk County Police Department as a Clerk in March 2006. (Am. Compl. ¶ 9.) Police Officer ("P.O.") Salerno was employed by the Suffolk County Police Department as a police officer in 1988 and continues to be employed as a police officer for the Police Department. (Am. Compl. ¶ 10.) Both Plaintiffs worked in the Court Liaison Office before Lt. Hasper was made Commanding Officer and after he was assigned to that unit and became their direct supervisor in about August 2007. (Am. Compl. ¶¶ 12, 15, 16, 61, 63.) The Plaintiffs observed that the previously congenial atmosphere of the Court Liaison Office changed with the arrival of Lt. Hasper. (Am. Compl. ¶ 17.) Rather than working to see that office staff worked in a cooperative manner, Lt. Hasper appeared to enjoy setting up office staff against one another. (Am. Compl. ¶ 18.) More importantly,

Lt. Hasper did not respect boundaries and treated female employees as potential sexual conquests rather than as employees of the County working on a common mission. (Am. Compl. ¶ 22.) Lt. Hasper has made public sexual remarks about other employees in the Court Liaison Office, as well as about court café employees and assistant district attorneys. (Am. Compl. ¶¶ 56, 57.) It is Plaintiffs' belief that Lt. Hasper has a history of being transferred from one division of the Suffolk County Police Department to another because of his sexual harassment of women. (Am. Compl. ¶ 13.)

### Allegations Specific To Plaintiff Cosgrove

When Ms. Cosgrove was promoted to Senior Clerk Typist on March 17, 2008, Lt. Hasper claimed responsibility for the promotion, even though it came about through the efforts of her previous supervisor, and repeatedly pressured her to go to lunch with him to celebrate her promotion. (Am. Compl. ¶¶ 23, 25, 26.) Ms. Cosgrove repeatedly turned down Lt. Hasper's invitations but finally relented when he told her that he was inviting all the women in the office. (Am. Compl. ¶ 27.) Just before the group lunch was supposed to occur, Ms. Cosgrove learned from a coworker that Lt. Hasper had made it clear to the other women that he only wanted to go to lunch with Ms. Cosgrove. (Am. Compl. ¶ 28.) Although Ms. Cosgrove suggested they drive separately, Lt. Hasper insisted that they go together in an unmarked Police Department vehicle. (Am. Compl. ¶ 29.) Instead of returning to the office following lunch, Lt. Hasper drove Ms. Cosgrove to a home which he identified as the home of a politician who was a friend of his and, after knocking on the front

door and getting no answer, told her, "Someday this will be all yours. Liz, if you treat me right, I'll do the right thing by you." (Am. Compl. ¶¶ 30, 31.) Ms. Cosgrove interpreted this statement as a request that she perform a sexual act on him, which frightened her. (Am. Compl. ¶ 32.)

About one month following the sexual-advance-at-lunch incident, Plaintiff Cosgrove requested a tour change from Lt. Hasper, so that she could continue working a second job for financial reasons. (Am. Compl. ¶¶ 33, 34.) About one month later, when Lt. Hasper had not made a decision on her request for a tour change, and Ms. Cosgrove confronted him about breaching her request to keep her financial situation confidential by discussing the reasons for her request with one of her coworkers, Lt. Hasper grabbed her arm above the elbow and stated in a nasty tone of voice, "What do you think this is going to prove?" (Am. Compl. ¶¶ 35-37.) Another police officer in the Court Liaison Office, who apparently also had learned of Plaintiff's request for a tour change, stated in front of other employees, "You ain't getting your hours; just give him a blow job and you'll get whatever you want." (Am. Compl. ¶ 38.)

In February 2009, Ms. Cosgrove proposed that she be given the responsibility of entering state warrants into the system at the request of state personnel. Lt. Hasper turned down her request and, according to a state supervisor, became agitated and unprofessional when he told the supervisor that he did not want Ms. Cosgrove performing that function. (Am. Compl. ¶¶ 39, 40.)

In July 2009, Ms. Cosgrove again asked for a change of tour. (Am. Compl. ¶ 41.) Lt. Hasper inappropriately told her that she should get more money from her former husband,

questioned how she had paid her bills the year before, and asked to speak to the supervisor at her second job to see if she was lying about her need for a schedule change. (Am. Compl. ¶ 42.) Lt. Hasper never granted Ms. Cosgrove's request for a tour change, and she was required to use annual leave in order to leave 30 minutes early one day per week for her second job, even though Lt. Hasper allowed other employees in the office to attend doctor's appointments, get car repairs, or run other errands without using leave. (Am. Compl. ¶ 43.) In addition, Lt. Hasper required Ms. Cosgrove to report that she was leaving for lunch, even though other employees were not required to do so. (Am. Compl. ¶ 44.)

In September 2010, Lt. Hasper questioned Ms. Cosgrove about some lengthy telephone calls to the New York City Police Academy and appeared peeved when he learned that Plaintiff's friend at the Academy was male. (Am. Compl. ¶¶ 45, 46.) He accused her of lying in response to his questions concerning the telephone calls, then told her that she needed a good spanking and that she just got spanked. (Am. Compl. ¶ 47.) A day or two later, Ms. Cosgrove was transferred to the Central Records Office. (Am. Compl. ¶ 48.) Even after her transfer, Lt. Hasper continued to snoop for information regarding her male friend at the New York City Police Academy, questioning two employees of the Court Liaison Office about him and even asking the New York City Police Department Office of Internal Affairs to investigate Plaintiff's friend and take action against him. (Am. Compl. ¶¶ 49-52.) Because of Lt. Hasper's ongoing harassment, Ms. Cosgrove resigned her position on November 20, 2009. (Am. Compl. ¶ 53.) Even after her resignation, Lt. Hasper continued to pursue any "dirt" on "Liz and her friend." (Am. Compl. ¶ 54.)

Ms. Cosgrove complained orally about Lt. Hasper's behavior to the civilian union representative Ben and to Sgt. Nancy Burn, Chief Robert Moore, and Captain Nieves. (Am. Compl. ¶ 59.) On December 21, 2009, Plaintiff Cosgrove filed a written Sexual Harassment Complaint with Suffolk County. (Am. Compl. ¶ 58.)

### Allegations Specific To Plaintiff Salerno

On May 2, 2008, P.O. Salerno filed a written Sexual Harassment Complaint with Suffolk County. (Am. Compl. ¶ 62.) In her Sexual Harassment Complaint, P.O. Salerno complained that Lt. Hasper should not supervise the Court Liaison Office where she worked because seven or eight years earlier, after she had rebuffed his request for a date, he had improperly used office records to obtain her personal telephone number, which he called to pressure her for a date. (Am. Compl. ¶ 63.) As other reasons why he was unfit to supervise the office, P.O. Salerno stated that three female employees in the First Precinct and two female employees in the Second Precinct had complained of harassment by Lt. Hasper, and that he had been banned from the District Attorney's Office for going into the office and asking female assistant district attorneys if they needed rides to their cars, even though their cars were only 100 feet away. (Am. Compl. ¶¶ 65, 66.) P.O. Salerno also complained that Lt. Hasper intimidated the civilian workers by cornering them if they spoke with her. (Am. Compl. ¶ 64.)

P.O. Salerno's Sexual Harassment Complaint also alleged that on March 22, 2008, Lt. Hasper used her computer without her permission and accessed a pornography site which

caused such severe problems to her computer that she had to get a replacement. (Am. Compl. ¶ 67.) In addition, P.O. Salerno complained that on May 2, 2008, Lt. Hasper stated to her in the presence of three other officers that she was not to wear her police sweater, and when she gave him a new doctor's note on May 3, 2008, authorizing her to wear a police sweater, Lt. Hasper said he had talked to the chiefs about her, indicating her note was not sufficient. (Am. Compl. ¶¶ 68, 69.)

Lt. Hasper continued to demean P.O. Salerno's work after she filed the Sexual Harassment Complaint. (Am. Compl. ¶ 70.) For example, he told an assistant attorney general not to come to the Court Liaison Office to work on arrests on a particular day because "I have the female cop. Come in tomorrow when the A Team is working and the guys will be here." (Am. Compl. ¶ 71.) On another occasion when there was a heavy snow and P.O. Salerno and several male officers made the effort to arrive at the office on time, Lt. Hasper ordered P.O. Salerno to return home and take leave but allowed the male officers, to remain in the office and work, although she explained that she, like the male officer needed to perform her duties. (Am. Compl. ¶ 72.) Lt. Hasper frequently refused to approve Plaintiff Salerno's requests for days off, while granting requests for days off from male employees. (Am. Compl. ¶ 73.) He charged time against P.O. Salerno if she had to come in late due to a doctor's appointment, but he did not charge time against male employees who came in late due to a doctor's appointment. (Am. Compl. ¶ 74.) When Lt. Hasper was outside the Court Liaison Office and called in, he would hang up if P.O. Salerno answered the telephone but not if a male answered the telephone. (Am. Compl. ¶ 75.)

### Exhaustion of Administrative Remedies

Ms. Cosgrove timely filed a Charge of Discrimination against Defendant Suffolk County with the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination and retaliation, on or about May 12, 2010. (Am. Compl. ¶ 76; O'Brien Aff., Exs. 1, 2.) The EEOC issued a Right to Sue letter on April 11, 2011. (Am. Compl. ¶ 78.)

### ARGUMENT

**I.      STANDARD ON MOTION TO DISMISS**

In addressing a motion to dismiss, this Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of Plaintiffs. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

II. **THE NOTICE-OF-CLAIM PROVISION DOES NOT APPLY TO PLAINTIFFS' CLAIMS AGAINST LT. HASPER.**

General Municipal Law § 50-e(1)(b) provides:

> Service of the notice of claim upon an officer, appointee or employee of a public corporation *shall not be a condition precedent to the commencement of an action or special proceeding against such person.* If an action or special proceeding is commenced against such person, but not against the public corporation, service of the notice of claim upon the public corporation shall be required only if the corporation has a statutory obligation to indemnify such person under this chapter or any other provision of law.

(Emphasis added.) Therefore, the notice-of-claim provision does not apply to a suit against Lt. Hasper in his individual capacity[1] unless the County is required by statute to indemnify him. *See D'Angelo v. City of New York*, 929 F. Supp. 129, 135 (S.D.N.Y. 1996) ("a plaintiff asserting state tort claims against defendants who are employees of [a municipality] in their individual capacity must file a notice of claim only if the individual defendant is found to be statutorily entitled to indemnification by the [municipality] for the claims asserted.").

---

[1] In footnote 3 of Lt. Hasper's brief, he presumes that he is sued in his official capacity because "Plaintiffs do not specify whether Hasper is sued individually or in his official capacity," but Plaintiffs do allege that he was acting as a supervisory employee and they refer to him as "Lt. Hasper." In fact, ¶ 7 of the Amended Complaint plainly states that Lt. Hasper "is sued in his individual capacity."

8

Suffolk County's obligation to defend[2] and indemnify police officers is addressed in General Municipal Law § 50-m. Under that statute, the County is required to indemnify Lt. Hasper if he was acting "in the proper discharge of his duties and within the scope of his employment." *Id.* § 50-m(1). "The determination of whether any such officer properly discharged his duties within the scope of his employment shall be made in a manner which shall be established by rules and regulations and procedures promulgated by the Suffolk county executive and adopted by the Suffolk county legislature." *Id.* § 50-m(2). Pursuant to Suffolk County Code § 42-48, the duty to indemnify does not extend to conduct that is intentional or reckless or to punitive or exemplary damages, fines, or penalties.

Since Suffolk County has a sexual harassment policy, Lt. Hasper could not have been properly discharging his duties within the meaning of General Municipal Law § 50-m(1) if he was engaged in sexual harassment. Moreover, the County is not required by law to indemnify Lt. Hasper for intentional conduct. *See* Suffolk County Code § 42-48(B). Accordingly, even if the County were to choose to indemnify him, it is not required to indemnify him, and, thus, he is not subject to the notice-of-claim provision of General Municipal Law § 50-i. *See, e.g., Grays v. City of New Rochelle*, 354 F. Supp. 2d 323, 327 (S.D.N.Y. 2005) (plaintiff was not required to file notices of claim against individual police

---

[2]It is not clear whether Suffolk County is defending Lt. Hasper by paying for defense by private counsel. The same private firm representing him in this case has also filed a civil rights suit on his behalf against the County, which arises out of the same set of facts alleged in the Amended Complaint. (O'Brien Aff., Ex. 3.) Because a firm hired to defend an employee cannot have interests adverse to the County, *see* Suffolk County Code § 42-3(C)(1), the filing of this civil rights suit suggests that Suffolk County is not defending Lt. Hasper in this case.

officers he sued for false arrest, false imprisonment, malicious prosecution, abuse of process, prima facie tort, negligence, and gross negligence because the city had no obligation to indemnify the officers for violations at common law).

### III. PLAINTIFFS' CLAIMS BROUGHT PURSUANT TO 42 U.S.C. § 1983 AND THE NEW YORK STATE HUMAN RIGHTS LAW ARE NOT ALL TIME-BARRED.

Plaintiffs agree that the three-year statute of limitations applies to their 42 U.S.C. § 1983 claims and their NYSHRL claims. Accordingly, those claims brought pursuant to § 1983 and the NYSHRL that arose prior to June 29, 2008 are time-barred. However, the Amended Complaint alleges claims by P.O. Salerno arising out of conduct that occurred after she filed her May 2, 2008 Sexual Harassment Complaint with Suffolk County, *see* Amended Complaint ¶¶ 70-75). These claims are not barred by the three-year statute of limitations.

Likewise, the bulk of Ms. Cosgrove's § 1983 and NYSHRL claims arose within the limitations period. Lt. Hasper misreads the Amended Complaint when he argues that claims related to Ms. Cosgrove's first request for a shift change are time-barred because "Cosgrove alleges that she asked for a shift change about a month after she had lunch with Hasper, which was in March 2008." (Lt. Hasper's Memo. of Law p. 6.) The Amended Complaint alleges that Ms. Cosgrove was promoted effective March 17, 2008 (Am. Compl. ¶ 4) and that after several rebuffs, she finally agreed to go to lunch with Lt. Hasper and other coworkers (*id.* ¶¶ 26-29). However, the Amended Complaint does not allege when Ms. Cosgrove actually went to lunch with Lt. Hasper, and Lt. Hasper has offered no evidence documenting

the precise date. Therefore, it cannot be presumed that Ms. Cosgrove's claim arising out of the failure to grant her request for shift change is time-barred. In the event that the Court determines that the Amended Complaint is defective for failure to state a time frame for the lunch incident, then Ms. Cosgrove respectfully requests the opportunity to amend the Amended Complaint to set forth a time frame.

### IV. THE AMENDED COMPLAINT STATES DISCRIMINATION CLAIMS.

#### A. The Amended Complaint Alleges Claims For Hostile Environment Discrimination.

The Amended Complaint adequately alleges the elements of a hostile environment claim. Morevoer, each Plaintiff alleged facts personal to her that illustrated the existence of a working environment in which the commanding officer continually showed disrespect for female employees under his command, as well as for other female workers with whom he came in contact on the job. (Am. Compl. ¶¶ 22, 56, 57.) From the beginning, Lt. Hasper exerted physical control over Ms. Cosgrove (Am. Compl. ¶¶ 26-32), making her wary of him and uncomfortable on her job. Lt. Hasper refused Ms. Cosgrove's shift changes on account of gender (Am. Compl. ¶¶ 33-43), requiring Ms. Cosgrove to take leave not required of other employees and making her work for Suffolk County more stressful. He investigated her friendship with a male (Am. Compl. ¶¶ 45-47), and even after she was reassigned to Central Records, he continued to interfere in her personal life, leading to her resignation due to harassment. (Am. Compl. ¶¶ 48-53). P.O. Salerno likewise described incidents that made

11

the workplace uncomfortable for her, including Lt. Hasper's use of her office computer to access a pornography site (Am. Compl. ¶ 67), his harassment of her for wearing a sweater in the office (Am. Compl. ¶¶ 68-69), and his refusal to approve days off for her or to allow her to come to work late after a doctor's appointment, when he approved the same requests for male officers (Am. Compl. ¶¶ 73-74). He openly told colleagues that P.O. Salerno was incompetent because she was female (Am. Compl. ¶ 71), making it difficult for P.O. Salerno to work in a professional environment.

Far from alleging a single act, *cf. Litchhult v. USTRIVE2, Inc.*, 2011 WL 3877084 (E.D.N.Y. Sept. 1, 2011) (slip copy), the Amended Complaint alleges pervasive behavior by Lt. Hasper. Moreover, the acts, taken as a whole, are far from petty. *Cf. Pezzano v. Sears, Roebuck & Co.*, 131 F.3d 131, 1997 WL 738071, at *1 (2d Cir. 1997) (unpublished table disposition) (affirming judgment as a matter of law in favor of defendant at close of evidence at trial based on a finding that the plaintiff's female supervisor did not sexually harass him by (1) referring to everyone in the office as the "girls," ignoring the gender of the plaintiff and sole male employee in the office; (2) offering him a "Midol" pill; (3) complaining about the plaintiff bringing lunch to work, even though female employees brought their lunches to work; (4) throwing away some papers that the plaintiff was working on; and (5) giving him undesirable sales leads). Lt. Hasper's disrespect of female employees and his arbitrary denial of, for example, requests for shift changes or leave based solely on the gender of the requester directly affected the ability of Plaintiffs' abilities to perform their jobs in a professional manner, unaffected by harassment.

The allegations in the Amended Complaint facts are sufficient to allow a trier of fact to infer that there was a gender-based hostile environment in the Court Liaison Office under Lt. Hasper's command. Plaintiffs should be allowed to prove their claims.

### B.   Ms. Cosgrove Has Alleged A Claim For Quid Pro Quo Sex Discrimination.

While she was seated in his vehicle following lunch and after he had knocked on the door of a supposedly influential friend, Lt. Hasper stated to Ms. Cosgrove, "Someday this will be all yours. Liz, if you treat me right, I'll do the right thing by you." (Am. Compl. ¶ 31.) Lt. Hasper argues, without citation to any law, that this cannot be construed as a sexual advance. However, it was not simply the statement, but the whole scenario that persuaded Ms. Cosgrove to reasonably interpret the statement as part of a sexual advance. Certainly under the circumstances, a female clerk typist who had been coerced into going out to lunch by herself with her commanding officer, who had been coerced into riding in his vehicle against her objections, and who had been taken to a residential neighborhood following lunch instead of being returned to the office, could have construed this as a sexual come-on.

The Amended Complaint alleges materially adverse changes in the terms and conditions of Ms. Cosgrove's employment, including constructive discharge. (Am. Compl. ¶¶ 96, 101.) "The Supreme Court has held that a constructive discharge is 'functionally the same as an actual termination' and therefore is considered an adverse employment action under Title VII." *Madray v. Long Island Univ.*, 789 F. Supp. 2d 403, 409 (E.D.N.Y. 2011) (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 148 (2004)). Constructive discharge

can be an adverse employment action for purposes of a quid pro quo sexual harassment claim. *See, e.g., Champion v. Nationwide Sec., Inc.*, 450 Mich. 702, 545 N.W.2d 596 (1996), *overruled on other grounds by Hamed v. Wayne County*, 490 Mich. 1, 803 N.W.2d 237 (2011); *Wal-Mart Stores, Inc. v. Itz,* 21 S.W.3d 456 (Tex. App. 2000). Lt. Hasper cites to a recent case from the Eastern District of New York, *Clarke v. Pacifica Foundation*, 2011 WL 4356085, at *13 (E.D.N.Y. Sept. 16, 2011), which stands for the proposition that constructive discharge cannot serve as the basis for a Title VII quid pro quo claim. In that case, decided on summary judgment, the court concluded that the "plaintiff d[id] not present sufficient facts to establish that [her supervisor's] behavior caused her to quit her job." *Id.* at *14. Ms. Cosgrove, like the plaintiff in *Clarke*, should be allowed to develop her claim to provide evidence of the causal connection.

V.     **P.O. SALERNO HAS ALLEGED A CLAIM FOR RETALIATION.**

The Amended Complaint (Am. Compl. ¶¶ 106, 113) alleges that P.O. Salerno suffered adverse employment actions, including the creation of a sexually hostile environment, in retaliation for her filing of the May 2, 2008 internal complaint against Lt. Hasper. However, P.O. Salerno acknowledges that, with the exception of the allegation in ¶ 69 of the Amended Complaint that on May 3, 2008, Lt. Hasper told P.O. Salerno that he had talked to the chiefs about her and that her doctor's note was insufficient, the Amended Complaint does not contain a time frame from which the Court could determine whether adverse employment acts were undertaken in response to P.O. Salerno's Complaint. Accordingly, P.O. Salerno

respectfully requests the opportunity to amend her Complaint to allege a time frame for her retaliation claim if the Court finds it necessary.

### VI.     MS. COSGROVE STATES A CLAIM FOR CONSTRUCTIVE DISCHARGE.

Lt. Hasper argues that the Amended Complaint can be construed to allege that Ms. Cosgrove quit her job because she was denied a shift change, was not allowed to perform someone else's duties, and was investigated for making lengthy personal telephone calls at work. In fact, the Amended Complaint can be construed to allege not only these facts, but also that toward the end of Ms. Cosgrove's employment, Lt. Hasper became fixated on her relationship with a male employee of the New York City Police Department and that he improperly acted on that fixation by not only conducting an investigation within his own police department, but approaching the New York City Police Department and insisting that that department conduct its own investigation into the relationship. As evidence of Lt. Hasper's improper motive, he continued his "investigation" even after Ms. Cosgrove had quit her job. (Am. Compl. ¶¶ 45-55.) Certainly Ms. Cosgrove was justified in leaving her employment to escape this frightening behavior by a supervisory employee.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Lt. Hasper's motion to dismiss in its entirety and permit P.O. Salerno to amend the Amended Complaint to assert a time frame for her retaliation claim if the Court deems it necessary.

Dated: January 6, 2012

Respectfully submitted,

ELIZABETH COSGROVE and
LAURIE SALERNO

By: /s/ Stephen L. O'Brien
Stephen L. O'Brien, Esquire
O'Brien & O'Brien, LLP
168 Smithtown Boulevard
Nesconset, NY  11767
Telephone:  (631) 265-6660
Facsimile:  (631) 265-3991
E-Mail:  stephen@oboblaw.com

Attorney for Plaintiffs