UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

ELIZABETH COSGROVE and LAURIE SALERNO,

                Plaintiffs,

    -against-                                11-CV-3112 (JKB)(ETB)

COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE
DEPARTMENT and LT. WILLIAM HASPER,

                Defendants.

------------------------------------------------------------------------X


**DEFENDANT WILLIAM HASPER'S
MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION
AND IN FURTHER SUPPORT OF THE
MOTION TO DISMISS THE AMENDED COMPLAINT**


                                            LEEDS MORELLI & BROWN, P.C.
                                            ONE OLD COUNTRY ROAD, STE 347
                                            CARLE PLACE, NEW YORK 11514
                                            516-873-9550

## PRELIMINARY STATEMENT

Plaintiffs attempt to obfuscate the fact that their claims are time-barred and insufficient as a matter of law by melding their clearly distinct claims into one story. Notwithstanding, their claims remain woefully inadequate and must be dismissed.

## ARGUMENT

### I.   TIME BARRED CLAIMS

Plaintiffs concede that their Section 1983 and NYSHRL claims are subject to a three-year statute of limitations. Thus, only claims arising on or after June 29, 2008 are timely making Salerno's allegations in paragraphs 63-69 time barred.

Cosgrove argues that the Court cannot determine whether her first request for a shift change is time barred. However, Cosgrove has provided the answer in her opposition. The O'Brien Declaration Exhibit 2 is an EEOC Questionnaire completed by Plaintiff Cosgrove and submitted to the EEOC. In an attachment to the questionnaire, Cosgrove writes, "a few months after the lunch with Hasper, it was April 2008 when I started working part time for Transportation Security Administration. . . I asked Lt. Hasper if I could please change my working hours from 8 x 4 to 7 x 3." (O'Brien Decl. Ex. 2, p.6[1]). Thus, Exhibit 2, properly considered by the Court as a document filed with an administrative agency,[2] establishes that the first shift change was in April 2008 and is time barred.

---

[1] The reference to the page number is the numbering at the bottom of the exhibit.

[2] Courts may consider facts of which it may take judicial notice, such as filings in other courts and administrative agencies. Kavowras v. New York Times Co., 328 F.3d 50, 57 (2d Cir. 2003) (taking judicial notice of charge filed and decision rendered in NLRB action). Moreover, where such facts contradict the allegations of the complaint, the Court may accept such facts over those alleged in the complaint. Global Network Communications, Inc. v. City of New York, 458 F.3d 150 (2d Cir. 2006).

## II.     PLAINTIFFS FAIL TO STATE DISCRIMINATION CLAIMS

### A.     No Actionable Hostile Work Environment Existed

A hostile work environment claims requires a showing by the Plaintiff that (1) she was in a protected class; and that the alleged harassment (2) was severe or pervasive such that it altered conditions of employment; (3) was unwelcome; and, (4) was based on plaintiff's status as a member of the protected class. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 69 (1986) (quoting 29 C.F.R. §1604.11(b)).  The conduct must be both objectively and subjectively hostile. Kaytor v. Electric Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010).  Plaintiffs' arguments highlight the fact they complain not of sexual harassment, but of petty workplace annoyances and of the general way Hasper ran his office.  For example, Plaintiffs argue that Hasper, "showed disrespect for female employees," and Hasper's alleged conduct "made the workplace uncomfortable for her."  (Pl. Opp. Memo. at 11-12).  Even if true, such conduct does not create an actionable hostile work environment since it did not alter the terms and conditions of employment and even if it made the workplace uncomfortable for her, she does not show how it was objectively hostile.

Cosgrove argues that "from the beginning, Hasper exerted physical control over Ms. Cosgrove." (Id. at 11).  As support for this argument, Cosgrove relies on the one incident where Hasper asked her to go to lunch to celebrate her promotion and insisted that they drive together. Although Cosgrove may have been uncomfortable, taking a subordinate for lunch, even under the circumstances alleged by Cosgrove, cannot objectively be viewed as hostile.

Cosgrove's remaining allegations, even taken together, do not show a continuous concerted pattern of conduct that altered the terms and conditions of employment.  Cruz v. Coach Stores, Inc. 202 F.3d 560, 570 (2d Cir. 2000).  The "lunch" incident occurred in spring 2008.  A few months later, Cosgrove did not receive a shift change.  No further conduct is

alleged until February 2009 when Cosgrove requested to assume the responsibilities of another employee and requested a shift change. After the February 2009 shift change request, nothing further is alleged until September 2009[3] when Hasper discovered Cosgrove had been making lengthy phone calls to the New York City Police Academy and launched an investigation.

Between the time Hasper first approached Cosgrove about the calls and her November 2009 resignation, Cosgrove alleges: (1) Hasper called Cosgrove a liar regarding her answers about the calls (Compl. ¶ 47); (2) she was laterally transferred away from Hasper to Central Records (Compl. ¶ 48); (3) Hasper questioned two employees about seeing Cosgrove and her friend from the NYPD Academy at Carvel (Compl. ¶ 49); (4) Hasper suggested to the NYPD that it investigate Cosgrove's friend, including showing Hasper's employees a photo lineup to identify the friend (Compl. ¶¶ 50,51); and (5) Hasper and the NYPD internal affairs bureau asked a store manager to give a statement about seeing Cosgrove and her friend from the Academy at the store. (Compl. ¶ 53). Cosgrove makes no showing nor is it plausible that these acts affected the terms and conditions of Cosgrove's employment or affected her in any other way. In fact, the only conduct complained of which even touches on Cosgrove is Hasper calling her a liar and the transfer. However, the transfer is not alleged to have been effectuated by Hasper or alleged to have resulted in any negative impact on her employment. Accordingly, Cosgrove does not state a hostile work environment claim.

Likewise, Salerno's allegations also fail. In the three years Hasper supervised Salerno, she complains of: (1) one incident when Hasper accessed pornography on her computer which she did not see; (2) not being allowed to wear a police sweater in May; (3) being sent home once

---

[3] The Complaint states that the investigation started in September 2010. (Compl. ¶ 45). However, this date is not plausible since Cosgrove alleges she resigned in November 2009. (Compl. ¶ 53). The O'Brien Declaration Ex. 2 suggests November 2009 is the correct date of the resignation.

because of a snow storm; (4) "frequently" but not always was being denied time off; (5) being charged for time off for arriving late because of a doctor's appointment; and (6) being hung up on if she answered the phone. Even if based on her gender, which Hasper does not concede, and even if proven true, these trivial workplace annoyances spread over the course of three years do not rise to level of severity or pervasiveness to sustain a hostile work environment claim. See Gonzalez v. N.Y.S. Div. of Human Rights, 10-CV-98, 2011 WL 4582428, *4 (S.D.N.Y. Sept. 29, 2011) (sporadic conduct is not severe or pervasive to sustain hostile work environment claim); Zucco v. Auto Zone, Inc., 800 F. Supp. 2d 473, 475 (W.D.N.Y. 2011); Graham v. Elmira City School Dist., 2011 WL 2837629, *3 (W.D.N.Y. July 14, 2011) (five occurrences of conduct over four years insufficient to support claim particularly where no conduct was physically threatening); Crawford v. Lutheran Med. Ctr., 08-CV-3429, 2011 WL 887806, *6 (E.D.N.Y. Mar. 14, 2011).

### B.   Cosgrove Does Not State a Claim for Quid Pro Quo Harassment

Cosgrove cannot meet any element of a quid pro quo claim because she cannot show that her rejection or acceptance of a sexual advance resulted in a tangible employment action. Alexander v. Westbury Union Free Sch. Dist., CV-10-0606, 2011 WL 5401806, *14 (E.D.N.Y. Nov. 4, 2011) (quotations omitted). Cosgrove makes no showing to create a nexus between the spring 2008 lunch incident with any of the alleged employment decisions. Cosgrove essentially argues that because Hasper and she went to lunch together in an unmarked police car where he commented that ""Someday this will all be yours. Liz, if you treat me right, I'll do the right thing by you," that the allegedly negative ensuing employment actions relate back to this incident. Even taking the facts in a light most favorable to Cosgrove, there are no facts alleged to support the plausibility that she was not given a shift change, not allowed to do someone else's

job (enter state warrants), transferred, and constructively terminated because of the one incident in the car months, in some cases, or nearly a year after the incident, in other cases. Hasper made no other alleged advances, comments, or engaged in any other conduct to support an inference that the actions are connected to a rejected sexual advance.

Moreover, Cosgrove does not allege an actionable employment decision. The one hour shift change and the denial of the request to do the additional work of entering state warrants (which was the responsibility of another employee) are not actionable. Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000); Strasser v. Irving Tissue, Inc., 09-CV-00747, 2011 WL 1882279, *16 (N.D.N.Y. May 17, 2011) (citing DiBrino v. Dep't of Veterans Affairs, 118 Fed. Appx. 533, 535 (2d Cir. 2004); Sanders v. N.Y.C. Human Resources Admin., 361 F.3d 749, 755 (2d Cir. 2004)).

Cosgrove argues that a constructive discharge can be an adverse action under Title VII and relies on a Michigan case from 1996. Champion v. Nationwide Sec. Inc., 450 Mich. 702, 710-711 (1996), interprets Michigan Law so it is entirely inapplicable to the resolution of this case applying federal and New York State law which state that even if a constructive discharge were proved, it cannot form the basis of a quid pro claim. Clarke v. Pacifica Foundation, 07-CV-4605, 2011 WL 4356085, *10-11 (E.D.N.Y. Sept. 16, 2011) (citing Burlington Indus. v. Ellerth, 524 U.S. 742 (1998); Rogers v. City County Health Dep't, 30 Fed. Appx. 883, 888 n.2 (10th Cir. 2002; Bonenberg v. Plymouth Township, 132 F.3d 20, 28 (3d Cir. 1997)). Accordingly, even if given a chance to prove that her resignation was a constructive discharge, as Cosgrove asks for, she cannot establish a *prima facie* quid pro case because she cannot use the discharge as an adverse action, so her Complaint is ripe for dismissal on a motion to dismiss.

Moreover, Champion is entirely distinguishable. In Champion, the supervisor viciously raped his subordinate. 450 Mich. 702 at 710. The Court held that the employee clearly rejected the supervisor's sexual advance. Id. At that point, the supervisor made the decision to rape the employee. Id. The supervisor should have known that by making the decision to do something as horrible as rape, it would result in the employee's resignation. Id.

Contrarily, the alleged conduct here is far from rape. There are no allegations that Hasper forced himself on Cosgrove or attempted to force himself on her. In fact, the allegations are so far from an overt sexual advance, Cosgrove has to plead that she "interpreted" his acts as a sexual advance. Unlike the defendant in Champion, Hasper did not make a decision to act in a way that he knew would result in resignation after Cosgrove "rejected" a sexual advance. Accordingly, Cosgrove's voluntary resignation does not constitute an employment decision and Cosgrove cannot state a quid pro quo claim.

## III.   SALERNO DOES NOT ESTABLISH A PLAUSIBLE RETALIATION CLAIM

To the extent the Court finds that Salerno sets forth timely conduct for a retaliation claim, Salerno nevertheless cannot establish a connection between her complaint and any alleged adverse action. Altieri v. Albany Public Lib., 172 Fed. Appx. 331, 333 (2d Cir. 2006) (an employment discrimination complaint need not set forth facts sufficient to survive a summary judgment, but it must set forth facts from which causation can plausibly be inferred). Salerno admits that Hasper's alleged conduct "continued" after her complaint, thus she does not show that the action was taken because of her complaint. (Compl. ¶ 70). Nor does Salerno provide any dates by which the Court can infer a causal connection through the timing. See St. Jean v. United Parcel Service Gen. Serv. Co., 09-CV-3782, 2012 WL 71843, *11 (E.D.N.Y. Jan. 10, 2012). Moreover, Salerno alleges that the conduct was based on her gender, not because Hasper

was retaliating against Salerno for participating in a protected activity.  (See Compl. ¶ 72 ("allowed other male officers to remain"), ¶ 73 ("would not approve Salerno's requests . . . while granting days off from male employee"), ¶ 74 ("did not charge time against male employee"), ¶ 75).

Salerno apparently argues that she was subjected to a retaliatory hostile work environment.  In addition to establishing the elements of a hostile work environment discussed above, to establish a causal connection, a plaintiff must show a "ratcheting up" of the pre-existing behavior or new forms of harassment.  Hall v. N.Y.C. Dep't of Transp., 06-CV-2908, 2010 WL 1260198, *19 (E.D.N.Y. Mar. 30, 2010).  As discussed, Plaintiff cannot establish the elements of a hostile work environment and she certainly does not show a "ratcheting up" of the harassment.  Accordingly, her retaliation claims must be dismissed.

## IV.     COSGROVE VOLUNTARILY RESIGNED

Cosgrove does not dispute Defendant's analysis of the high standard required to state a claim for constructive discharge.  Indeed, Courts routinely dismiss such claims on a motion to dismiss.  E.g. Milne v. Navigant Consulting, 2009 WL 4437412, *9 (S.D.N.Y. Nov. 30, 2009); White v. City of New York, 09 Civ. 10127, 2010 WL 2697054, *4 (S.D.N.Y. July 7, 2010); Costa v. City of New York, 546 F. Supp. 2d 117, 119 (S.D.N.Y. 2008).

Here, Cosgrove does not allege that the working conditions were so intolerable that she was forced to resign.  In fact, she alleges that the conduct continued after she resigned and was no longer working for Suffolk County.  Accordingly, she can not be complaining of workplace conditions.

Cosgrove nevertheless does not plead a plausible claim for constructive discharge.  Cosgrove's opposition makes much ado about Hasper's investigation of Cosgrove's apparent

unauthorized use of SCPD property to make lengthy personal telephone calls at work. However, although the conduct may have been about Cosgrove, it did not involve Cosgrove, but for one incident when Hasper called her a liar. After that, she was transferred.[4] The remaining allegations have nothing to do with Cosgrove; she alleges: (1) Hasper asked two employees about seeing Cosgrove out with her friend from the academy; (2) Hasper suggested to the NYPD internal affairs that they investigate Cosgrove's friend;[5] (3) Hasper asked the NYPD to show a photo spread to the two employees he interviewed; and (4) Hasper brought the NYPD to take a statement from a store manager who saw Cosgrove with the friend. (Compl. ¶¶ 49-52). Cosgrove does not plead how nor is it plausible to believe that this conduct which involved people other than Cosgrove and which took place outside the workplace, had any affect whatsoever on Cosgrove's working conditions. Accordingly, she cannot maintain a claim for a constructive discharge.

## V.  REQUEST TO AMEND

At several points in their memorandum, Plaintiffs request the opportunity to amend the Amended Complaint to correct omissions for a second time to avoid dismissal. A party may amend its pleadings as a matter of right within twenty-one days after a motion to dismiss has been served. FED. R. CIV. P. 15(a)(1)(B).[6] On December 1, 2011, Defendants served their motion to dismiss. December 22, 2011 was the last date by which Plaintiffs could amend their

---

[4] Cosgrove does not allege that this transfer had any negative impact on her. In fact, it is more plausible that it had a positive impact in that she no longer worked with Hasper who she is alleging acted so horribly that she was subjected to a hostile work environment and constructive discharge. (Compl. ¶ 48).

[5] Cosgrove does not allege that the NYPD took any action against the friend or Cosgrove.

[6] During the pre-motion conference to discuss the instant motion, the Court allowed Plaintiffs to amend the Complaint. This request would be the second attempt at amendment.

Complaint without leave of Court or without Defendants' consent, which has not been sought. Plaintiff's opposition memorandum is not the appropriate mechanism to request such an amendment; therefore, the Court should reject Plaintiffs' request to submit a Second Amended Complaint. See id. (a)(2); J. Bianco, IND. PRACT. R. III(A); Morgan v. County of Nassau, 720 F. Supp. 2d 229, 233 (E.D.N.Y. 2010). If the Court considers Plaintiffs' request, it should nevertheless be denied. The proposed amendments would be futile since the Amended Complaint cannot withstand a motion to dismiss even with the proposed additions. Holmes v. Grubman, 568 F.3d 329, 334 (2d. Cir. 2009).

## CONCLUSION

For the reasons discussed above and for the reasons discussed in Defendant's initial moving papers, Defendant Hasper respectfully requests that the Court grant his motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12 (b)(6) in its entirety.

Dated: Carle Place, New York
       January 20, 2012

                                   Respectfully submitted,

                                   LEEDS, MORELLI & BROWN, P.C.
                                   *Attorneys for Plaintiff*
                                   One Old Country Road, Suite 347
                                   Carle Place, N.Y. 11514
                                   (516) 873-9550

                                   By:_____/s/_____
                                        MATTHEW WEINICK